# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-IA-01467-SCT

*JOSHUA PROPERTIES, LLC, PERFORMANCE*
*SPORTS ACADEMY, LLC AND CHRIS SNOPEK*

*v.*

*D1 SPORTS HOLDINGS, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2012 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | TERRIS CATON HARRIS |
| | DENNIS C. SWEET, III |
| | WILLIAM (BO) ROLAND |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER LAMAR WANSLEY |
| | ARMIN J. MOELLER, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 01/30/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Joshua Properties, LLC; Performance Sports Academy, LLC; and Chris Snopek (all referred to as "Snopek"), filed suit against St. Dominic Health Services, Inc. (St. Dominic); D1 Sports Holdings, LLC (D1 TN); and D1 Sports Training of Mississippi, LLC (D1 MS) in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  D1 TN moved for dismissal based on lack of personal jurisdiction and failure to state a claim.  After a hearing on the matter, the trial court entered an order granting D1 TN's motion based on

a lack of personal jurisdiction over the party. Snopek subsequently was granted this interlocutory appeal seeking this Court's ruling on whether personal jurisdiction exists in Mississippi over D1 TN. We find that personal jurisdiction does exist over D1 TN.

¶2. D1 TN relies on *Public Employees' Retirement System v. Hawkins*, 781 So. 2d 899, 900-01 (Miss. 2001), in which this Court, in the interest of justice, considered issues that were not raised in the petition for interlocutory appeal, to assert in the alternative that this case should be dismissed for failure to state a claim pursuant to Mississippi Rule of Civil Procedure 12(b)(6). D1 TN properly raised this issue before the trial court, however, the trial court did not rule on the issue; therefore, we will not address this issue for the first time on appeal.

**STATEMENT OF THE FACTS**

¶3. In 2007, Snopek proposed to St. Dominic the concept of working together in opening a multi-use sports complex for the Jackson metropolitan area. Through Joshua Properties, LLC, land was located for the complex in Madison County, Mississippi. After Snopek and St. Dominic collaborated over the designs and plans for the complex, the parties entered into a letter of intent. The letter of intent included the purchase of property located through Joshua Properties, LLC, but the letter was subject to expiration on February 28, 2008. The property was never acquired, and the letter of intent expired. However, Snopek alleges that the parties continued to move forward with the project together.

¶4. In December 2009, Snopek contacted D1 TN, a limited liability company formed under Tennessee state law, which has its principal place of business in Tennessee, and is not qualified to conduct business in the state of Mississippi. Snopek proposed to D1 TN the idea

2

of becoming involved in the development of the sports complex by aiding with the sports and fitness aspects of the project, since D1 TN's business focuses on custom sports-training programs, expert coaching, and sports therapy. D1 TN displayed an interest in becoming involved in the endeavor.

¶5.     Snopek provides that it thereafter introduced D1 TN to St. Dominic, and all of the parties together moved forward with the opening of the sports complex. D1 TN states that it discussed the project with Snopek only one time, in December 2009. D1 TN further states that it was contacted by St. Dominic around September 2010 about collaborating to create a sports-training facility in Madison County, Mississippi.

¶6.     St. Dominic and D1 TN worked together to form D1 MS, which was created to manage the operations of St. Dominic's sports-training facility. D1 MS's members are comprised of St. Dominic and D1 TN. In late 2011, St. Dominic published its collaboration with D1 TN in undertaking the building of a sports-training facility in Madison, Mississippi.

¶7.     Thereafter, Snopek initiated suit against St. Dominic, D1 MS, and D1 TN, alleging breach of fiduciary duties, misappropriation of trade secrets, tortious interference with prospective advantage, unfair competition, civil conspiracy, and usurpation of business opportunity. On D1 TN's motion to dismiss, the trial court ruled that personal jurisdiction did not exist over D1 TN in Mississippi for the purposes of this action. Snopek then filed a motion for interlocutory appeal with this Court.

## ANALYSIS

**Whether personal jurisdiction exists in Mississippi over D1 Sports Holdings, LLC.**

3

¶8.     Jurisdictional issues are reviewed pursuant to a *de novo* standard of review. ***McDaniel v. Ritter***, 556 So. 2d 303, 308 (Miss. 1989) (citing ***MISS CAL 204, Ltd. v. Upchurch***, 465 So. 2d 326, 330 (Miss. 1985)).  Jurisdiction is decided based on the existing facts at the time the action is commenced.  ***Estate of Jones v. Phillips ex rel. Phillips***, 992 So. 2d 1131, 1137 (Miss. 2008) (citing ***Euclid-Mississippi v. Western Cas. & Sur. Co.***, 249 Miss. 547, 554, 163 So. 2d 676, 679 (1964)).

¶9.     Determining whether personal jurisdiction can be exercised over a nonresident defendant involves a two-part analysis.  ***Phillips***, 992 So. 2d at 1137 (citing ***Sorrells v. R & R Custom Coach Works, Inc.***, 636 So. 2d 668, 671 (Miss. 1994)).  First, we must analyze and decide if the Mississippi long-arm statute is applicable to D1 TN.  ***Phillips***, 992 So. 2d at 1137 (citing ***Sorrells***, 636 So. 2d at 671).  Second, we must determine if applying the long-arm statute to D1 TN comports with the Due Process Clause of the Fourteenth Amendment and the U.S. Constitution.  ***Id***.

### 1.  Mississippi Long-Arm Statute

¶10.    Mississippi Code Section 13-3-57 sets forth the following occurrences which subject a nonresident to personal jurisdiction within the state of Mississippi:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this State.

Miss. Code Ann. §  13-3-57 (Rev. 2012).

4

¶11.     Snopek alleges that D1 TN committed a tort in the state, entered into a contract in the state, and conducted business within the state.  Because we find that D1 TN was "doing business" within the state in accordance with the long-arm statute, we will not address whether D1 TN committed a tort or entered into a contract in the state.  *Phillips*, 992 So. 2d at 1139.

¶12.     Before the long-arm statute was amended in 1991, the "doing business" element of the statute could not be applicable to a nonresident defendant without a connection between the cause of action and the business, work, or service taking place within the state.  *Phillips*, 992 So. 2d at 1139 (citing *Mladinich v. Kohn*, 250 Miss. 138, 147, 164 So. 2d 785, 790 (1964)).  After the statute was amended, the "nexus" requirement between the cause of action and the business being conducted within the state was eliminated.  *Phillips*, 992 So. 2d at 1139 (citing *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 878 (Miss. 1995)).  Currently, ". . . the long-arm statute, by its plain terms, applies to any person or corporation performing any character of work in this state."  *Phillips*, 992 So. 2d at 1139; *see ITL Int'l, Inc. v. Constenla, S.A.*, 669 F. 3d 493, 498 (5th Cir. 2012); *Davenport v. Hansaworld USA*, No. 2:12-CV-233-KS-MTP, 2013 WL 5406900, at *4 (S.D. Miss. Sept. 25, 2013).

¶13.     D1 TN contends that it is "joint owners" of D1 MS with St. Dominic.  As previously mentioned, D1 TN and St. Dominic are the members of D1 MS, an LLC.  D1 TN created the LLC with St. Dominic via telephone and email communication.  D1 TN executed the documents to create D1 MS and electronically provided the documents to St. Dominic.  Will Bartholomew, on behalf of D1 TN, traveled to Mississippi on the following occasions: (1) to meet with medical professionals at Mississippi Sports Medicine and Orthopedic Center,

(2) to meet with St. Dominic regarding the creation of D1 MS, (3) to further discuss the creation of D1 MS with St. Dominic, (4) to finalize the creation of D1 MS with St. Dominic, (5) to discuss real estate options for the location of D1 MS, and (6) to attend the ground breaking for D1 MS.

¶14. D1 TN argues that it is not conducting business within the state so as to render it amenable to suit under the state long-arm statute because D1 TN has never conducted the following transactions within the state: (1) held an office or place of business, (2) solicited business on behalf of itself or through an agent, (3) contracted on behalf of itself or through an agent to supply goods and services, (4) maintained a Mississippi bank account, (5) obtained a telephone listing, (6) paid income taxes, (7) owned any real property, or (8) purposefully solicited, marketed, or promoted itself. D1 TN cites *Roxco, Ltd v. Harris Specialty Chemicals, Inc.*, 133 F. Supp. 2d 911, 916 (S.D. Miss. 2000), in which that court held the defendants made "transient" visits within the state to inspect products, but were not "doing business" within Mississippi because they did not sell products directly to residents, did not obtain a bank account in state, did not have a telephone listing, and did not own or lease real property. We find this argument to be without merit.

¶15. Looking to the plain language of the long-arm statute, we find that D1 TN was conducting business within the state and that it subjected itself to suit, considering the sum of its activities. D1 TN collaborated with St. Dominic about creating a sports-training facility in the state, communicated and planned with St. Dominic furthering its formation, participated in meetings in the state, substantially participated in the actual creation of D1 MS, and subsequently became members or "joint owners" of D1 MS. Finding the long-arm

statute applicable to D1 TN, we must now determine whether the application offends the Due Process Clause of the Fourteenth Amendment.

### 2. Due Process

¶16.    To ensure that the application of the long-arm statute over a nonresident corresponds with the requirements of due process, it must be shown that there are sufficient minimum contacts with the state such that allowing suit within the state ". . . does not offend 'traditional notions of fair play and substantial justice.'" *Phillips*, 992 So. 2d at 1139 (*quoting* *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (*quoting* *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940))). "Conduct in connection with the forum state must be such that he 'should reasonably anticipate being haled into court' in the forum state." *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 778 (S.D. Miss. 2001) (citations omitted); *see* *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Due process requires minimum contacts with the forum state to prevent nonresidents from becoming bound by judgments in a state where ". . . no meaningful 'contacts, ties, or relations'" have been established. *Internet Doorway*, 138 F. Supp. 2d at 778 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)).

¶17.    Minimum contacts with the forum state may trigger either specific personal jurisdiction or general personal jurisdiction. *American Cable Corp. v. Trilogy Commc'ns, Inc.*, 754 So. 2d 545, 550 (Miss. Ct. App. 2000) (citations omitted); *see* *Phillips*, 992 So. 2d at 1140; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 nn.8-9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Burger King Corp.*, 471 U.S. at 473 n.15.

7

General personal jurisdiction is appropriate over a nonresident when no nexus exists between the defendant's activities in the forum state and the litigation, and the contacts with the state are "systematic and continuous." **Phillips**, 922 So. 2d at 1141 (citing **Helicopteros**, 466 U.S. at 415-418, 104 S. Ct. 1868).  Specific personal jurisdiction is exercised over a nonresident when a nexus exists between the litigation and the activities within the state.  **Id**. *See* **Shaffer v. Heitner**, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 53 L. Ed. 2d 683 (1977).

¶18.    Here, the cause of action arises because of D1 TN's contacts with St. Dominic of Mississippi and the creation of and membership in a Mississippi LLC.  "A single act by the defendant directed at the forum state . . . can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."  **Horne v. Mobile Area Water & Sewer Sys.**, 897 So. 2d 972, 980 (Miss. 2004) (citing **Med. Assurance Co. of Miss. v. Jackson**, 864 F. Supp. 576, 578-79 (S.D. Miss. 1994)    (quoting **Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.**, 9 F.3d 415, 419 (5th Cir. 1993))).  Minimum contacts may be sufficient under specific jurisdiction when the nonresident's act or acts ". . . purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  **Med. Assurance Co. of Mississippi**, 864 F. Supp. at 579 (quoting **Ruston Gas Turbines**, 9 F. 3d at 419).

¶19.    In **Medical Assurance Co. of Mississippi**, the court found specific personal jurisdiction could be exercised over the nonresident defendant even though he had never been physically present within the state.  **Med. Assurance Co. of Miss.**, 864 F. Supp. at 579. The defendant negotiated a settlement on behalf of his client through two letters and two telephone conversations, which the court found were sufficient minimum contacts with the

8

forum state such that the defendant purposefully availed itself of the benefits of the state. *Id* at 579-80.

¶20. In comparison, D1 TN purposefully availed itself of the forum state by becoming a member of an LLC that is subject to the benefits and protections of the State of Mississippi. D1 TN becoming a member of an LLC through in-state and out-of-state negotiations, combined with its substantial participation in the formation of the LLC, are sufficient minimum contacts with the forum. Further, D1 TN is a member of an LLC formed for the purpose of overseeing a sports-training facility in the State of Mississippi.

¶21. Lastly, we must determine whether subjecting D1 TN to suit in Mississippi will offend "traditional notions of fair play and substantial justice" by considering the following factors: (1) Mississippi's interest in settling the case, (2) the potential hardship on D1 TN, (3) Snopek's concern with receiving "convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

¶22. Ultimately, D1 TN provides that no minimum contacts exist between it and Mississippi. D1 TN argues that the above factors need not be considered individually. Rather, only the fairness of exercising jurisdiction over it should be considered in determining whether "traditional notions of fair play and substantial justice" would be offended through exercising jurisdiction. However, the case D1 TN cites provides that "fairness" is determined by considering the aforementioned factors. *Allred v. Moore &*

9

***Peterson***, 117 F. 3d 278, 286 n.7 (5th Cir. 1997). D1 TN asserts that exercising jurisdiction over it would be burdensome because it is a Tennessee LLC and its principal place of business is in Tennessee. Further, D1 TN alleges that Snopek does not have a valid interest in any relief because Snopek fails to present any tortious or wrongful conduct by D1 TN in Mississippi.

¶23. Because D1 TN purposefully availed itself of the benefits of the State of Mississippi by becoming members of and aiding in the formation of an LLC in the state via telephone and electronic communications and by traveling to the state, we are unpersuaded by D1 TN's assertion that its physical location in Tennessee, alone, would subject it to an undue burden if required to appear in court in Mississippi. Further, Mississippi has an interest in overseeing the adjudication of the case, because D1 TN is a component part of a Mississippi LLC, which also is a defendant in the impending litigation. Lastly, Snopek obtains an interest in obtaining "convenient and effective" relief in Mississippi because the harm it alleges stems from the actions and contacts that D1 TN has within the state.

¶24. Accordingly, the "doing business" prong of the Mississippi long-arm statute is applicable to D1 TN. Further, D1 TN has established sufficient minimum contacts with Mississippi, and subjecting it to personal jurisdiction in the state would not violate the Fourteenth Amendment of the United States Constitution.

## CONCLUSION

¶25. The trial court's dismissal for lack of personal jurisdiction over D1 TN is reversed because exercising personal jurisdiction over the defendant does not violate the Mississippi long-arm statute or the Fourteenth Amendment of the United States Constitution. This case

10

is remanded to the First Judicial District of Hinds County, Mississippi for proceedings consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.**